```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HARRY BINDER, on behalf of SAM BINDER,
an infant,

                        Plaintiff,            REPORT AND
                                              RECOMMENDATION
         -against-                            CV 09-4181(SJF)(ARL)

COLD SPRING HARBOR CENTRAL SCHOOL
DISTRICT, et al.,

                        Defendants.
----------------------------------------------------------------X
```
**LINDSAY, Magistrate Judge:**

The plaintiff Harry Binder commenced this action on behalf of his minor son Sam Binder ("Binder") on September 29, 2009, against Cold Spring Harbor School District (the "District"), Helen Browne ("Browne"), and Judith Wilansky ("Wilansky"). This case arises due to the District's suspension of Binder for possession of large quantity of marijuana contained in a gallon-sized bag and several individual baggies, drug paraphernalia, and a cigarette. Binder's complaint alleges, under 42 U.S.C. §§ 1981, 1983, violations of the Fourth Amendment's prohibition of unlawful search and seizures and the Fourteenth Amendment's due process clause. On October 5, 2009, District Judge Feuerstein denied the plaintiff's motion for a temporary restraining order seeking to compel the District to re-enroll Binder. Before the court upon referral from Judge Feuerstein is the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the undersigned respectfully recommends that the motion be granted.

## BACKGROUND

Defendant Browne is the Assistant Principal of Cold Spring Harbor High School. (Defs.' Ex. C at 10-11.) On March 26, 2009, a teacher informed Browne that Binder and another student

smelled of marijuana. (*Id*. at 11-12, 51.) Browne separated the students in her office and placed Binder in a room where a security guard was present. (*Id*. at 12-13, 72-73.) As soon as the boys were separated, Browne could smell marijuana in the room where Binder was located. (*Id*. at 41-42.) Browne told Binder that a teacher had stated that Binder smelled of marijuana and that something was heard "rattling around your chest area." (*Id*. at 13.) Binder denied that he was carrying marijuana. (*Id*.) Browne then asked Binder to empty his pockets, upon which Binder partially complied by producing a cigarette, one or two empty plastic baggies, a driver's license, and a piece of metal. (*Id*. at 14, 26-29.) Binder acknowledged that the cigarette was his. (*Id*. at 14.) Binder withheld from disclosure a small bag of marijuana that remained in his pocket. (*Id*. at 24.)

Browne then told Binder that she wanted to examine his backpack. (*Id*. at 14.) Browne testified that Binder did not refuse, although Binder testified that Browne did not ask his permission. (*Id*. at 15, 129.) The security guard searched Binder's backpack and removed a large clear plastic bag and several smaller clear plastic baggies containing what the school officials concluded was marijuana. (*Id*. at 15, 18, 22-25; Defs.' Ex. D at 1.) After this discovery, Binder voluntarily reached into his back pocket and removed another small bag of marijuana. (Defs.' Ex. C at 24, 92-93.) Browne, who was familiar with both the smell and appearance of marijuana, could smell marijuana through the bags although she did not open them. (*Id*. at 15-21, 53.) Browne told Binder that he was in a tremendous amount of trouble. (*Id*. at 25.) Binder said very little and did not deny that the bags had been recovered from his belongings. (*Id*.) Browne then went to get the school's principal Jay Matuk ("Matuk"). (*Id*. at 30, 77.)

Matuk testified that after speaking with Browne he went to the room where Binder and the security officer were located and saw the clear plastic bags on the table. (*Id*. at 79.) Matuk

opened one of the bags smelled its contents, examined the cigarette, and reviewed the other items. (Defs.' Ex. C at 79-80.) Based upon his past school experiences, Matuk was able to immediately identify the substance in the bags as marijuana. (*Id*. at 82-83, 89, 91.) Matuk also identified the metal object as being part of a marijuana pipe.[1] (*Id*. at 80-81.) Matuk questioned Binder, who denied knowing the items were in his backpack or how they got there. (*Id*. at 81.) Binder, however, did not deny that the items were removed from his backpack. (*Id*.) Matuk told Binder that this was a serious matter and asked him to be candid. (*Id*. at 81-82.) Binder persisted in his claim of ignorance. (*Id*. at 82.) Matuk then questioned Binder about the small bag of marijuana which he had removed from his pocket. (*Id*. at 91-92.) At first, Binder could not explain its presence, but then offered the explanation that he had discovered the marijuana in his backpack and had removed the baggie in an attempt to discard it. (*Id*. at 93, 120.) Binder persisted in his claim that he did not put the marijuana in his backpack, adding that he had no idea who might have done so. (*Id*. at 94.)

Possession of cigarettes, marijuana, and drug paraphernalia is a violation of the school's code of conduct. (*Id*. at 94-96.) Pursuant to New York Education Law § 3214(3)(c), a hearing before a hearing officer was held on April 1, 2009. Prior to the hearing, Binder received notice that he was charged with possession of marijuana, drug paraphernalia, and a cigarette on school premises. (*See* Defs.' Ex. B.) The notice further advised Binder of his rights, including to be represented by counsel, to confront witnesses, and to present evidence and his own witnesses. At the hearing, Binder himself testified. Binder's father, an attorney licensed in the state of New

---

[1] Binder later testified that the metal object came from a DVD player and was instead a "good luck charm." (Defs.' Ex. C at 131.)

York, questioned Binder, cross-examined the defendants' witnesses, made objections, testified himself, and gave a closing statement.

At the conclusion of the hearing, the officer found Binder guilty of the charges and made numerous findings of fact. (Defs.' Ex. C at 165-68.) These findings included that: (1) the substance found in Binder's possession was marijuana; (2) the metal object in Binder's pocket was drug paraphernalia; (3) a teacher reported that Binder smelled of marijuana on the day in question; (4) Browne smelled marijuana on Binder; (5) Binder voluntarily emptied his pockets; and (6) Binder admitted possession of the cigarette. (*See* Defs.' Ex. E at 4-6.)

The officer then conducted a sentencing phase of the hearing and took additional testimony from Matuk and Binder's father. (Defs.' Ex. C at 168-89.) The officer memorialized his recommendations in a written decision, which recommended that Binder be suspended through the end of the following semester in January 2010, or for approximately ten months. (*See* Defs.' Ex. E.) In making this recommendation, the hearing officer noted that Binder was found in possession of a very large quantity of marijuana, a substantial portion of which was in smaller bags for apparent distribution. (*Id*. at 7.) The hearing officer also noted that Binder had not demonstrated any remorse for his actions and had instead "chosen to lie" rather than accept responsibility. (*Id*.) Thus, the hearing officer did not credit what he termed a "feeble attempt, under oath, to disclaim ownership of the marijuana."[2] (*Id*.)

After reviewing the written decision as well as the hearing transcript and exhibits, the District's superintendent Wilansky adopted the officer's report, including that Binder be

---

[2] At the hearing, Binder testified that he lost sight of his backpack earlier in the day, after which he discovered the marijuana. (Defs.' Ex. C at 116-18.) Binder denied that his backpack smelled of marijuana. (*Id*. at 119.)

4

suspended through January 2010.  (*See* Defs.' Ex. G.)  Binder appealed to the District's school board, which upheld Wilansky's findings and penalty.  (Defs.' Ex. J.)  Binder appealed the suspension to the New York State Commissioner of Education, the state administrative agency that oversees the state's public schools.  That appeal was still pending as of the submission of the foregoing motion.

## ANALYSIS

Binder's complaint alleges that: (1) Browne's search of Binder was illegal because she lacked reasonable suspicion; and (2) the hearing violated Binder's due process rights.  The defendants now move to dismiss the complaint under Rule 12(b)(6) because: (1) this court is precluded from reconsidering findings of fact determined by the hearing officer; (2) Browne's search of Binder was reasonable as a matter of law; (3) Browne has failed to allege a violation of procedural or substantive due process; and (4) Browne and Wilansky are protected from liability under the sovereign immunity doctrine.

**I.     Standard**

In reviewing the defendants' motion to dismiss under Rule 12(b)(6), the court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  To meet this requirement, the complaint must show "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

5

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

When considering a Rule 12(b)(6) motion to dismiss, the court may also consider documents attached or referenced in the complaint. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Such consideration includes documents to which the plaintiff had notice "and which were integral to their claim . . . even though those documents were not incorporated into the complaint by reference." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## II.     Preclusion of the Administrative Factual Findings

As a threshold matter, the defendants argue that Binder is precluded from relitigating the hearing officer's findings of fact. The defendants note that Binder has made identical arguments regarding the merits of these findings in his appeal before the New York Commissioner of Education. In response, Binder argues that the hearing officer did not make constitutional determinations and that the factual findings were "flawed."

The Supreme Court has long held that "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings . . . ." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). "The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees." *Id*. (citations omitted). Thus, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive

effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (citations and internal quotation marks omitted); *see also Burkybile v. Board of Education of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308-11 (2d Cir. 2005). Such administrative determinations are entitled to preclusive effect if they were made in a quasi-judicial capacity and with a full and fair opportunity to litigate the issue. *Id*. at 312 (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 825-27 (1984)). If so, than those facts decided at the administrative hearing are precluded. *Id*.

Although Binder argues at length that the hearing officer's findings of fact were erroneous, he has failed to show that he did not have a full and fair opportunity to litigate these issues through a quasi-judicial administrative hearing. The officer's findings of fact, which were aided by the ability to observe the witnesses' demeanor and to assess their credibility, were clearly supported by competent and substantial evidence. In rendering these findings in an administrative setting, it was proper for the hearing officer to rely upon hearsay evidence and to make reasonable inferences based upon the credible evidence. *See Bd. of Educ. of Monticello Cent. Sch. Dist. v. Comm'r of Educ.*, 91 N.Y.2d 133, 141 (1997). The only factual issue raised by Binder which warrants further discussion is the claim that it was unreasonable for the hearing officer to have concluded, in the absence of a lab test, that the seized substance was marijuana. The court disagrees. The substance found in Binder's backpack was identified by three school officials. Two of the three school officials were able to identify the marijuana by both smell and appearance based upon their past experience with the substance on school premises. Finally, Binder himself, who admitted to previously smoking marijuana, believed the seized substance was marijuana. (Defs.' Ex. C at 136, 141.) Given this testimony and the well-known and distinctive smell and appearance of marijuana, it was wholly reasonable for the hearing officer to rely on this testimony.

As for Binder's claim that the proceeding lacked fairness, a review of the record suggests otherwise. Binder was allowed to and did present a defense. He was permitted to fully cross-examine the defendants' witnesses as well as object to their evidence. All of the testimony was taken under oath subject to the penalties of perjury. Moreover, although Binder waived his right to an attorney, he was zealously represented by his father, a seasoned attorney. Binder's father made numerous objections, cross-examined the defendants' witnesses, testified himself, and gave a lengthy closing statement. At no point during the hearing did the hearing officer prevent Binder's father from speaking or otherwise interfere with his defense. Binder nonetheless asserts that the hearing officer was insufficiently neutral, pointing principally to the fact that the officer asked questions. A review of the record reflects that the hearing officer conducted a limited examination of Binder, which was principally aimed at clarifying testimony he had given. Indeed, after the hearing officer's examination, Binder's father was given another opportunity to inquire, but declined to do so, apparently finding it unnecessary. (*See* Defs.' Ex. C at 146.)

It is by now well-established that it is not improper for a judge to participate in a proceeding by asking questions of a witness so long as he/she does not become an advocate for either side. *See United States v. Filani*, 74 F.3d 378, 384-85 (2d Cir. 1996). Given the record, this court could find no support for Binder's claim that the hearing officer abdicated his duty to remain impartial. Accordingly, the undersigned concludes that Binder had a full and fair opportunity to litigate the relevant issues of fact before a quasi-judicial administrative hearing. Binder is thus precluded from relitigating the hearing officer's well-supported findings of fact in this forum. The court turns now to the constitutional claims raised by Binder which the defendants appear to concede he is not precluded from raising.

**III. Search and Seizure**

Binder argues that the defendants violated the Fourth Amendment because Browne did not have sufficient cause to search him. Although the Fourth Amendment "applies to searches conducted by public school officials," it is well-established that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *New Jersey v. T.L.O.*, 469 U.S. 325, 333, 340 (1985); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, -- U.S. --, 129 S.Ct. 2633, 2646-47 (2009). Thus, courts apply the special needs exception to the probable cause requirement in the school setting and conduct a two-part inquiry to determine whether a search is reasonable: "first, one must consider 'whether the . . . action was justified at its inception[;]'. . . second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *T.L.O.*, 469 U.S. at 341 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1967)). The Supreme Court thus held:

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341-42 (footnotes omitted). Under this more lenient standard, the undersigned agrees with the defendants that Binder's search and seizure claim fails as a matter of law.

Binder contends that the search was unreasonable because he did not smell like marijuana, and essentially argues that Browne failed to conduct a sufficient investigation prior to conducting the search. As noted above, the factual issue of whether a smell was emanating from Binder is precluded, and the court is bound by the hearing officer's findings that a teacher reported the

9

smell of marijuana and that Browne herself smelled marijuana on Binder. It is well-established that probable cause is established by a suspicious smell. *See U.S. v. Jackson*, 652 F.2d 244, 251 n.6 (2d Cir. 1981). Further, *even if* Browne was mistaken about the smell, which she was not, probable cause may still exist based upon mistaken belief "so long as the [agent] acted reasonably and in good faith in relying on that information." *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). Browne's testimony shows that she relied in good faith upon having smelled marijuana in Binder's presence and the teacher's similar observation. Browne also relied upon the teacher's statement that something was "rattling around" Binder's chest area and the teacher's belief that Binder had been touching bags containing marijuana. Browne was not required to conduct any further investigation prior to searching Binder, and Browne properly relied upon the reasonable statements of others. *See Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997) (agents are not required to "explore and eliminate every theoretically plausible claim of innocence"); *United States v. Property at 4492 S. Livonia Road*, 889 F.2d 1258, 1267 (2d Cir. 1989) ("Probable cause . . . traditionally may be established by hearsay.") (citation omitted). Under the more flexible approach afforded to school administrators in conducting searches, and especially in light of the seriousness of bringing marijuana to a school, Browne had sufficient cause to conduct the search as a matter of law.

Furthermore the scope of the search was reasonable. It was entirely reasonable for the school officials to begin their search by asking Binder to empty his pockets. Binder produced empty plastic bags, a cigarette, and what was later determined to be drug paraphernalia. Binder admitted to Browne that the cigarette belonged to him, which was itself a violation of the school's policy. Therefore, in addition to the well-founded suspicion that Binder had marijuana in his belongings at the outset of the search, finding the cigarette and other items clearly gave Browne

10

additional reasonable suspicion to then search Binder's backpack. Accordingly, the undersigned finds that the search was justified at its inception due to the reasonable grounds to suspect that Binder had marijuana in his possession. Further, to the extent that Binder was in a private room and the search was confined to his pockets and backpack, the search was not excessively intrusive in light of the seriousness of the violation. Accordingly, the undersigned recommends that Binder's search and seizure claim be dismissed.

## IV.     Due Process

Binder argues that the defendants also violated the Fourteenth Amendment by failing to provide him with sufficient due process prior to his suspension from school. Although Binder appears to acknowledge that the defendants complied with New York Education Law § 3214(3)(c) by providing him with notice and a hearing before an officer, he again argues that the officer was insufficiently neutral. Binder also argues that the officer applied the wrong standard of proof.

As an initial matter, the claim that a hearing officer is biased is not a cognizable deprivation of due process because "New York education law grants the superintendent the authority to appoint the hearing officer." *See D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. School Dist.*, 386 F. Supp. 2d 119, 127 (E.D.N.Y. 2005), *aff'd*, 180 Fed. Appx. 232 (2d Cir. 2006), *cert. denied*, 549 U.S. 1179 (2007). Even if this claim were cognizable, for the reasons given above the court does not agree with Binder that the hearing officer abdicated his neutrality. As for Binder's claim that the hearing officer applied the wrong burden of proof, the defendants do not dispute that the officer cited a preponderance of the evidence standard rather than the proper competent and substantial evidence standard. (*See* Defs.' Ex. C at 3, 163.) However, as the defendants argue, it is puzzling how this rises to a violation of due process when the hearing officer, by applying the preponderance of the evidence standard, found Binder guilty under a

11

*more* stringent standard than was required. *See Bd. of Educ. of City Sch. Dist. of City of New York v. Mills*, 293 A.D.2d 37, 39-40 (3d Dept. 2002). Accordingly, the undersigned finds that Binder has failed to allege a violation of his procedural due process rights.

Otherwise, Binder suggests that he suffered a violation of his substantive due process rights due to length of the suspension. In this regard, "[a] school administration's decision to suspend a student will provide a basis for a substantive due process claim only in the very 'rare case' when there is 'no rational relationship between the punishment and the offense.'" *DeFabio v. East Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 486 (E.D.N.Y. 2009) (quoting *Rosa R. v. Connelly,* 889 F.2d 435, 439 (2d Cir. 1989)). Here, the defendants' decision to suspend Binder for approximately ten months was supported by findings that Binder possessed a large amount of marijuana, Binder intended to distribute the marijuana, and Binder showed no remorse or responsibility for his actions. Accordingly, Binder has not sufficiently alleged that the punishment bore no rational relationship to the offenses, and the undersigned recommends that Binder's due process claim be dismissed.

**RECOMMENDATION**

For foregoing reasons, the undersigned respectfully recommends that defendants' motion be granted and Binder's compliant be dismissed in its entirety.[3] Any objections to this Report and Recommendation must be field with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Beverly*

---

[3] Because the undersigned recommends dismissing Binder's claims under the grounds described above, the court does not reach the issue of whether Browne and Wilansky are protected under the sovereign immunity doctrine.

*v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
July 19, 2010

_____/s_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge